# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| DEBRA GRIFFIN and JOY GARDNER, on Behalf of Themselves and a Class of Persons Similarly Situated, | Case Number: 2:10-cv-10610 |
| | PAUL D. BORMAN |
| | UNITED STATES DISTRICT JUDGE |
| Plaintiffs, | |
| v. | |
| FLAGSTAR BANCORP, INC.; REBECCA A. LUCCI; ERIN ENGLAND; JOHN DOES 1-10, AND; RICHARD ROES 1-20, | |
| Defendants. | |
| _____/ | |

## OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF PLAN OF ALLOCATION (ECF NO. 48) AND (2) GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CASE CONTRIBUTION AWARDS (ECF NO. 49)

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of Settlement Class and Approval of Plan of Allocation (ECF No. 48) and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursements of Expenses and Case Contribution Awards (ECF No. 49).  The Court conducted a Final Fairness Hearing on December 3, 2013.  For the reasons that follow, the Court GRANTS final approval of the Settlement Agreement and Settlement Class, approves the Plan of Allocation and GRANTS the requested award of fees, expenses and case contribution awards.  A separate Order and Judgment is filed contemporaneously with this Opinion and Order.

1

**INTRODUCTION**

In this ERISA class action, the parties have proposed, and the Court has preliminarily approved, a $3,000,000 cash settlement for a non-opt-out class of all participants or beneficiaries in the Flagstar Bank 401(k) Plan for whose individual accounts the Plan purchased and/or held interests in the Flagstar Stock Fund. The parties now move for final approval of the Settlement Agreement, Settlement Class and the Plan of Allocation and also seek an award of attorneys' fees in the amount of $900,000, reimbursement of expenses of $62,473.72 and case contribution awards to the two named Plaintiffs each in the amount of $5,000.

**I.     BACKGROUND**

This action arises from Debra Griffin and Joy Gardner's ("Plaintiffs") claim, on behalf of themselves and a class of persons similarly situated (the "Participants" or "Employees"), that their former employer Flagstar Bancorp, Inc. ("Flagstar") breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by failing to prudently and independently administer the Flagstar Bank 401(k) Plan (the "Plan") from December 31, 2006 to May 2, 2013, inclusive (the "Class Period"). (ECF No. 16, Consolidated Complaint for Breach of Fiduciary Duty and Violation of ERISA Disclosure Requirements, ("Compl.") ¶ 1-4.)[1] Plaintiffs bring this action under § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3). (*Id.* ¶ 1.) Specifically, Plaintiffs allege that Defendants violated the duties imposed upon plan fiduciaries under ERISA section 404, 29 U.S.C. § 1104. (*Id.*) Plaintiffs allege that Defendants violated ERISA by continuing to offer Flagstar stock as an investment option to

---

[1] Debra Griffin and Joy Gardner initiated independent putative class actions that were later consolidated. (ECF No. 15, Stipulated Order Granting Plaintiffs Leave to File Consolidated Amended Complaint.)

Plan participants when it was imprudent to do so because of Flagstar's precarious financial condition and prospects.

On March 31, 2011, this Court granted Defendants' motion to dismiss, finding in part that Plaintiffs had not sufficiently overcome the legal presumption, to which the Court concluded Defendants were entitled, that investment in the stock of their employer corporation is prudent and in accordance with their fiduciary duties under ERISA. *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2011 WL 1261196 (E.D. Mich. March 31, 2011). In *Griffin v. Flagstar Bancorp, Inc.*, 492 F. App'x 598 (6th Cir. 2012), the Sixth Circuit reversed and remanded the case, based in part upon intervening circuit precedent, *Pfeil v. State Street Bank and Trust Co.*, 671 F.3d 585 (6th Cir. 2012), which held that the presumption of prudence is "evidentiary in nature and thus does not apply at the pleading stage." 492 F. App'x at 602. The Sixth Circuit further concluded that Plaintiffs' Complaint "raised a *plausible* claim [under the pleading standards of *Twombly* and *Iqbal*] that a prudent fiduciary would have discontinued offering Flagstar stock at some point during the class period." *Id.* at 605 (emphasis in original).

Following remand, in October, 2012, the parties began to discuss engagement of an independent mediator and agreed upon David Geronemus of JAMS to conduct mediation. (Pls.' Mot. Final Approval 4.) The parties exchanged expert reports and mediation submissions and met with the mediator on January 10, 2013. The parties were unable to agree among themselves but after further individual deliberation, each party ultimately accepted the mediator's independent proposal that Flagstar pay $3,000,000 to the Plan, to be allocated to Plan Participants pursuant to a Court approved Plan of Allocation, after payment of fees and expenses. (*Id.* at 5.) Flagstar also obtained an Independent Fiduciary's Report prepared by Nicholas L. Saakvitne, which found that the

3

settlement "is reasonable and provides a meaningful recovery in the aggregate and individually to participants and beneficiaries taking into account the very substantial hurdles Plaintiffs would have to overcome to prove their case and the small likelihood of full recovery by the Plan . . . ." (ECF No. 42, Supplemental Declaration of Michael J. Klein in Support of Plaintiffs' Motion for Preliminary Approval of Settlement, Exhibit D, July 15, 2013 Report of Independent Fiduciary Nicholas L. Saakvitne 7.)

On July 29, 2013, this Court granted preliminary approval of the proposed Settlement Agreement, preliminarily certified a Settlement Class and approved the form and manner of Notice proposed by the parties. *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 4779017 (E.D. Mich. July 29, 2013). The Court established a date of December 3, 2013 for the Final Fairness Hearing. No objections to the proposed Settlement Agreement have been filed with the Court and no objectors appeared at the Final Fairness Hearing. The parties are presently before the Court seeking final approval of the Settlement Agreement, Settlement Class and Plan of Allocation and requesting an award of attorneys' fees and expenses and case contribution awards for the two lead Plaintiffs. For the reasons that follow, the Court GRANTS the motions.

## II.     ANALYSIS

The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits. *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"). "The evaluation and approval of a class settlement is committed to the sound discretion of the district court" and the district court "should approve a class settlement if, following

a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593, 594. "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006) (internal quotation marks and citations omitted). "Given that class settlements are favored, the role of the district court is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE-CWA*, 238 F.R.D. at 594 (citations omitted); *Sheick v. Automotive Component Carrier, LLC.*, No. 09-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010) ("In assessing a proposed settlement, the district court judge 'may not substitute his or her judgment for that of the litigants and their counsel' and 'should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'") (quoting *IUE-CWA*, 238 F.R.D. at 593) (internal quotation marks omitted). "Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties." *Ford Motor*, 2006 WL 1984363, at *21 (internal quotation marks and citation omitted).

       **A.**     **The Settlement Agreement is Fair, Reasonable and Adequate**

The Sixth Circuit has identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties;

5

(4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Ford Motor*, 2006 WL 1984363, at *22. Consideration of the relevant factors here favors final approval of the settlement agreement.

### 1. There is no risk of fraud or collusion.

"Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Ford Motor*, 2006 WL 1984363, at *26. There is no evidence of any collusion in this case. Both the mediator's proposal, which neither party initially was prepared to accept, and the independent fiduciary's opinion, are strong evidence that the negotiations were vigorous, were conducted at arm's length and were without any fraud or collusion.

### 2. The complexity, expense and likely duration of the litigation favor settlement.

Settlements should represent "a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). Conducting merits and expert discovery in this ERISA action would be time consuming and costly and would be followed by expensive and burdensome dispositive motions, trial and appeals. Settlement provides a certain and immediate benefit to the class members and outweighs the risk and cost of a trial on the merits. "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves that, no matter how confident trial counsel may be, they

cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *Id.*

### 3. The absence of formal discovery does not disfavor settlement.

"[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). *See also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *Sheick*, 2010 WL 4136958, at *19 n.3 (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions") (quoting *Newby*, 394 F.3d at 306 ("Formal discovery [is not] a necessary ticket to the bargaining table")).

In this public information case, prior to filing their claims, Class Counsel extensively investigated the publicly available information and investigated the facts, including review and analysis of Plan-related documentation, review of Flagstar's SEC disclosures, analysis of Flagstar's publicly available financial statements, and interviews of Plan participants. (ECF No. 50, Joint Declaration in Support of Motions for Final Approval and Award of Fees and Expenses, ¶ 9.) Class Counsel also responded to a motion to dismiss and successfully appealed this Court's dismissal of Plaintiffs' claims. (*Id.* ¶ 6.) Additionally, in anticipation of mediation, Flagstar produced and Plaintiffs reviewed detailed Plan records sufficient to calculate hypothetical damages for the class period. (*Id.* ¶¶ 16-19.) The absence of formal discovery in this case in no way undermines the integrity of the settlement given the extensive investigation that has occurred as a result of proceedings thus far which demonstrates that counsel have a full understanding of the strengths and

weaknesses of their case.

  **4.  Balancing the likelihood of success on the merits against the amount and form of relief achieved through settlement favors final approval.**

In determining whether the relief offered in a settlement outweighs the plaintiffs' chances of ultimate success on the merits, the Court "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE-CWE,* 238 F.R.D. at 594. The Court "is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW*, 497 F.3d at 632.

Plaintiffs recognize that substantial hurdles remain to obtaining a damage award in this complex ERISA case. While the Sixth Circuit found that the Complaint stated a plausible claim for imprudence, the Sixth Circuit also suggested that the period of imprudence was likely to be determined to be something less than the entire class period. 492 F. App'x at 605 (noting the plausibility of a claim that "a prudent fiduciary would have discontinued offering Flagstar stock *at some point* during the class period") (emphasis added). Plaintiffs submit that they might well have a difficult time proving damages for the full duration of the class period - pinpointing when the fund became "imprudent" will be difficult for them, particularly given the fact that it did not become known to the market until December, 2008, that the only bidder responding to Flagstar's efforts to raise new capital would be a distressed debt investor. (ECF No. 48, Pls.' Mot. Final Approval 14 n. 11.) Plaintiffs' own calculations disclosed that the range of damages depending on the proven "date of imprudence" was $17.8 million (December 2006) to $3.5 million (December 2008) to $1.8 million (December 2009). Thus, the $3 million settlement represents 85% of what Plaintiffs would have been awarded had they been able to establish at trial what they describe as the "more likely

scenario of success on the merits." Also, of course, the costs of going through a full blown trial must be added to the balance. Moreover, as the Independent Fiduciary recognized in his report, while the Sixth Circuit has concluded that the presumption of prudence is not to be applied at the pleadings stage, the presumption arguably remains available at trial. (ECF No. 42-1, Report of Independent Fiduciary at 7, ¶ 1.) This factor favors final approval of the settlement agreement.

### 5. The recommendations of experienced counsel favor final approval.

Class Counsel's judgment that settlement is in the best interests of the class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick*, 2010 WL 4136958, at *18 (citation omitted). Class counsel in this case have extensive experience in handling complex ERISA claims, and other complex class action litigation. *See* ECF No. 40-4, Joint Declaration of Robert A. Izard and Michael J. Klein in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. Class counsel's recommendation of this settlement is entitled to significant weight. This factor favors final approval.

### 6. Objections by absent class members.

There have been no objections from any of the class members and no objectors appeared at the Final Fairness Hearing. Such unanimous approval is entitled to great weight and favors final approval, particularly where the Notice is known to have been mailed to each of the class members. Of the 2,952 Notices that were sent, 260 were returned and 7 had forwarding addresses. Through the use of a database that facilitates locating new addresses of people who have moved, of the 253 that had not been delivered the first time around, 230 were sent to new addresses. (ECF No. 50-2, Affidavit of Christina Peters-Stasiewicz ¶¶ 6-10.) Accordingly, Notice is known to have been successfully mailed to 99% of the Settlement Class.

**7.     Public policy favors final approval.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530.  There do not appear to the Court to be any countervailing public interests that would suggest that the Court should disapprove the settlement agreement and significantly no one has come forward to suggest one to the Court.  This factor weighs in favor of final approval.

**B.     Certification of the Settlement Class is Appropriate**

Certification of a class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Federal Rule of Civil Procedure 23(b).  *Ford Motor*, 2006 WL 1984363, at *18 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  This is a "non-opt-out" settlement, meaning class members do not have the opportunity to opt out but will be bound by the releases contained in the settlement agreement.  This is common in this type of ERISA case.  *See McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 677 (W.D. Wash. 2010) (Because "adjudications with respect to any individual member of the class would, as a practical matter, alter the interests of other members of the class . . . . classes in ERISA actions are typically certified under Rule 23(b)(1) and/or (b)(2) as mandatory, non-opt-out classes.") (collecting cases).

**1.     The class satisfies the requirements of Rule 23(a).**

Federal Rule of Civil Procedure 23(a) provides that class members may represent a class if the following prerequisites are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

10

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four prerequisites are met here:

### a. The class is sufficiently numerous.

Notice was mailed to 2,952 Settlement Class Members. (ECF No. 50-1, Joint Decl. Ex. 1, Oct. 2, 2013 Affidavit of Christina Peters-Stasiewicz ¶ 8.) The numerosity requirement is satisfied here. *See Ford Motor*, 2006 WL 1984363, at *19 (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (finding objection based on numerosity frivolous where class consisted of 1,100 members)).

### b. Common questions of law or fact exist.

"The requirement of commonality requires only a common question of law or fact." *Ford Motor*, 2006 WL 1984363, at *19 (citing *Bittinger*, 123 F.3d at 884). Here there are several common issues of law and fact such as whether Defendants owed a duty to the Plan participants and whether Defendants breached their fiduciary duties by continuing to offer investment in Flagstar stock. The commonality requirement is met.

### c. Plaintiffs' claims are typical of the class.

"If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Ford Motor*, 2006 WL 1984363, at *19. Plaintiffs allege that all Class Members suffered the same type of injury from the Defendants' breaches of their fiduciary duties. The typicality requirement is met.

### d. Plaintiffs are adequate class representatives.

"The two criteria for determining whether class representatives are adequate are '(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ford Motor*, 2006 WL 1984363, at *19 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). These requirements are satisfied here as the claims and interests of the Plaintiffs are the same as those of the absent class members and the vigorous prosecution of the action has already been established by class counsel's conduct in the case to date, both in negotiating the Settlement Agreement and in defending against, and successfully appealing an adverse decision on, Defendants' motion to dismiss.

### 2. Rule 23(b)(1)'s requirements are satisfied.

"In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citing cases). "Given that [this] is an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member, Rule 23(b)(1)(B) is clearly satisfied." *Id*. at 604-05. Certification of the settlement class satisfies the requirements of Rule 23(b)(1).

### C. The Proposed Plan of Allocation Warrants Approval

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 184

(E.D. Pa. 2000)).  *See also In re Cardizem*, 218 F.R.D. at 531 (approving a plan as fair and reasonable that adopted a *pro rata* method for calculating each class member's share of the settlement fund).

The proposed Plan of Allocation awards damages on a *pro rata* basis, calculating relative loss based upon calculation of each settlement class member's "net stock fund loss," calculated as follow: (1) the value of the participant's Plan account interest in the Fund at the beginning of the Class Period plus (2) the amount invested in the Fund during the Class Period minus (3) the amount withdrawn from the Fund during the Class Period minus (4) the value of Fund holdings in the participant's Plan account at the end of the class period. (ECF No. 48, Pls.' Mot. Final Approval 23; ECF 40-1, Flagstar Settlement Agreement, Ex. C, Plan of Allocation.)  The net stock fund losses of all participants are totaled to yield the loss of the participants as a whole.  The pro rata share of each participant is then calculated by dividing each participant's net stock fund loss by the Plan's total stock fund loss and then multiplying that percentage by the Settlement Amount net of the disbursements approved by the Court. (Plan of Allocation Section IIA.)  Thus, each class member will receive a share of the net proceeds that reflects the decline in value of Fund shares that he or she held/purchased/sold during the class period in comparison to the decline experienced by other class members and the distribution is through the Plan so that class members realize the tax advantage of their investment in the Plan.  Any Plan participant whose initial net stock fund distribution is less than ten dollars ($10) shall be excluded from further calculation and shall recover zero. (Plan of Allocation Section IIB.)

This Plan of Allocation is similar to plans used and approved in many ERISA company stock fund cases.  *See, e.g. In re Delphi Corp. Sec. Litig.*, 248 F.R.D. 483, 491-93 (E.D. Mich. 2008).

13

Finally, the Plan of Allocation excludes those employees of Flagstar who held the position of Executive Vice President or above on the notion that these higher ranked employees were in a far better position to have protected the Fund and their own investments.

### D. The Court Approves the Request for Attorneys' Fees, Expenses and Case Contribution Awards

An award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The Court must consider and discuss the relevant factors that determine reasonableness, which include: "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (holding that a district court's award of attorneys' fees in a common fund case need only be reasonable under the circumstances but remanding for an on-the-record discussion of these factors) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

The Sixth Circuit permits calculation of attorneys' fees under either the lodestar method (multiplying the number of hours spent on the litigation by certain attorneys by their hourly rate) or the percentage of the fund method (counsel receive a set percentage of the total settlement fund). In weighing the benefits and shortcomings of each method, the Sixth Circuit in *Rawlings* concluded: "For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." 9 F.3d at 516. The Sixth

Circuit has observed that "[t]he percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings*, 9 F.3d at 516.

Plaintiffs employ the percentage of the fund method and request an award of $900,000 in attorneys' fees which represents 30% of the $3,000,000 settlement fund. This requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) ("Courts have also awarded percentage fees of one-third or higher in ERISA company stock cases in appropriate circumstances, and especially when, as here, the fund is not a "mega" recovery."). Cross checking this amount using the lodestar method in this case also demonstrates that the fee request falls within the range of reasonableness. Counsel spent nearly 1,500 hours prosecuting this case and their combined lodestar is approximately $1,042,188.90. (ECF No. 50, Joint Decl. ¶¶ 43-58.) The requested percentage of the fund award thus represents a more than reasonable multiplier of the lodestar (0.864), actually resulting in a discount of Counsel's normal fees. *See In re Marsh*, 265 F.R.D. at 149 (recognizing numerous ERISA cases awarded fees yielding multipliers well above 1%).

Evaluating the *Moulton* factors in this case favors approval of the fee request. The $3 million settlement appears to be an excellent result given the uncertainties of the Plaintiffs' chances of ultimately prevailing on the issue of liability in this very uncertain area of ERISA and also given the challenges they face in establishing the operative date of imprudence. The case was taken on a contingent fee basis, a significant risk for counsel who would be standing with nothing to show for

15

their efforts had this Court's dismissal been upheld on appeal. The complexity of this ERISA litigation cannot be questioned, nor can the skill and expertise of counsel who are known nationally for their successful representation of ERISA clients in class action matters. (ECF No. 50, Joint Decl. ¶¶39-41.)

Plaintiffs also seek reimbursement of expenses in the amount of $62,473.72. These expense amounts are documented by firm and by category of expense in the Joint Declaration and appear reasonable. (ECF No. 50, Joint Decl. ¶¶ 48, 56, 58.)

Finally, Plaintiffs seek "case contribution" awards for the named Plaintiffs in the amount of $5,000 each for their significant time and effort spent prosecuting this action over the course of three and a half years. Such awards have been approved by the Sixth Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit.") The $5,000 payments to the two class representatives in this case seems reasonable given their involvement in assisting in collecting documents from Flagstar and providing information to class counsel to assist in the preparation and litigation of the case.

### III.  CONCLUSION

For the foregoing reasons, and as set forth in the accompanying Order and Judgment filed herewith this day, the Court (1) GRANTS final approval of the Settlement Agreement as fair, reasonable and adequate, (2) GRANTS final certification of the Settlement Class, (3) GRANTS final approval of the Plan of Allocation, (4) AWARDS Plaintiffs $900,000 in attorneys' fees and $62,473.72 in expenses, and (5) APPROVES case contribution awards of $5,000 for each of the two

named Plaintiffs.

IT IS SO ORDERED.

                                              s/Paul D. Borman  
                                              PAUL D. BORMAN  
                                              UNITED STATES DISTRICT JUDGE

Dated:  December 12, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 12, 2013.

                                              s/Deborah Tofil  
                                              Case Manager